## WAPA OIL & DEVELOPMENT CO. v. McBRIDE et al.

No. 10342—Opinion Filed Oct. 25, 1921.

Rehearing Denied Nov. 22, 1921.

Second Rehearing Denied Jan. 10, 1922.

(Syllabus.)

1. **Oil and Gas — Lease — Forfeiture for Failure to Develop — Equity Jurisdiction.**

Although a court of equity will decree a forfeiture of an oil and gas lease on account of a breach of an implied covenant to diligently operate and develop the property, when such forfeiture will effectuate justice, the granting of such relief depends upon the facts and circumstances surrounding the particular case.

2. **Same — Equity — "Coming into Court with Clean Hands."**

A landowner, or the owner of a subsequent lease, with notice of a former lease, invoking the jurisdiction of a court of equity to cancel and rescind a lease for breach of an implied covenant must come into court with clean hands.

3. **Same—Failure of Lessee to Drill Offset Wells.**

The general rule is that a court of equity will not cancel an oil and gas lease for failure to comply with an implied covenant to drill offset wells, unless notice has been served upon lessee that a failure to protect the line within a certain time will be considered grounds for forfeiture.

4. **Vendor and Purchaser — "Bona Fide Purchaser."**

The essential elements which constitute a bona fide purchaser are (1) a purchase in good faith (2) for value and (3) without notice.

5. **Same—"Notice."**

Whatever is "notice" enough to excite attention and put a reasonably prudent person on his guard and calls for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant with it.

Error from Superior Court, Okmulgee County; R. E. Simpson, Judge.

Action by the Wapa Oil & Development Company against W. A. McBride and others to cancel oil and gas lease and for injunctive relief; W. F. Keehn intervening. Judgment for defendants and intervener, and plaintiff brings error. Reversed and remanded, with instructions.

Herbert E. Smith and Stuart, Sharp & Cruce, for plaintiff in error.

Belford and Hiatt, for defendants in error.

McNEILL, J. This action was commenced in the superior court of Okmulgee county by the Wapa Oil & Development Company against W. A. McBride, E. R. Black, and the Black Drilling & Development Company to enjoin the defendants from going upon or drilling upon a certain 40 acres of land in Okmulgee county, and from interfering with the plaintiff from drilling upon said land, and to declare a subsequent lease executed by the landowner to W. A. McBride void, and asking that the same be canceled.

The defendant McBride answered, alleging he had a valid oil and gas lease upon said premises, and the plaintiff's oil and gas lease was null and void. The landowner, W. F. Keehn, asked permission to intervene in said action and asked to have the lease of the Wapa Oil & Development Company declared forfeited, but said application was denied. Upon the trial of the case, the trial court found the issues in favor of the defendant and against the plaintiff, and canceled plaintiff's lease. From said judgment, the plaintiff has appealed.

For reversal it is contended that under the undisputed facts plaintiff was entitled to recover, and that the finding of the trial court, when the law is applied to the facts, is clearly against the weight of the evidence. The undisputed facts may be stated as follows: W. F. Keehn is the owner of the fee of this 40 acres and an adjoining 40 acres. On the 24th day of April, 1914, he executed an oil and gas lease upon these two 40-acre tracts of land to N. C. Vaughan and C. S. Vaughan. The lease was for the term of two years, and as much longer as oil or gas was found in paying quantities. The Wapa Oil & Development Company became the owner of the lease in so far as it pertained to the 40 acres of land in question. The lease, so far as it pertained to the other 40 acres, was assigned and was owned by parties at Tulsa, Oklahoma. During the term of this lease an oil well was drilled upon the 40 acres of land covered by the

plaintiff's lease and produced some oil. No pipe line was in that vicinity and no market for the oil, and the well was not pumped regularly nor kept in good condition. The lease by its terms would expire on April 24, 1916, unless the well extended its terms. The plaintiff, however, without objection from the landowner, continued to occupy the premises, and occasionally did some work upon the well, and both parties treated the lease in full force and effect by virtue of this well.

The parties at Tulsa contended that the oil well upon this 40 acres was a compliance with the terms of the lease and inured to their benefit, and made the part of the lease assigned to them a valid and existing lease. Mr. Keehn, the owner of the land, during the month of May, 1917, had an opportunity to lease the 40 acres covered by the part of lease owned by the Tulsa parties for the sum of $500 and a well to be commenced within 30 or 60 days if he could obtain a release from the Tulsa parties.

Mr. Keehn, in his endeavors to secure a release from the Tulsa parties, talked to the different officers of the Wapa Oil & Development Company and to Mr. Herbert E. Smith, secretary and treasurer, who is also an attorney, and requested that the company assist him in getting a release from the Tulsa people to the east 40 acres. Mr. Smith called a meeting of the stockholders of the plaintiff company and a meeting was held on the 31st day of May, 1917, and Mr. Keehn was present, and at said meeting it was agreed between the stockholders and Mr. Keehn that the company would execute a release to Mr. Keehn to the 40 acres covered by its lease, reserving, however, the equipment in this well that was on said 40 acres. The release was executed; at the same time it was agreed that Mr. Keehn should execute to the plaintiff a new lease upon this 40 acres of land, which was done. Mr. Keehn advised the Tulsa parties that the plaintiff company had executed a release to their 40 acres and demanded that they execute a release to that 40; Mr. Herbert E. Smith, the secretary of the plaintiff, writing the letters for Mr. Keehn, or at least a portion of the same. In this manner a release was obtained from the Tulsa parties within about 30 days. The new lease, executed the 31st day of May, was not recorded. This lease dated May 31, 1917, contained the following provision:

"If no well be commenced on said lease before the first of December, 1917, this lease shall terminate as to both parties."

The lease, however, was for the term of two years, and as long thereafter as oil or gas was produced on the premises. The lease also contained the further provisions:

"It is understood and agreed that the oil well and equipment now upon said hereinabove premises belong to said second party and its right therein and thereto under former lease which right is resumed in the release of said lease."

During the month of June the Beelor Oil & Gas Company brought in an oil well offsetting this 40 acres of the Keehn land, and it was shot on the 7th day of July, 1917. Some time along about the first of July, the exact date being indefinite, Mr. C. T. Smith, who was apparently assuming the management of the lease in question for the plaintiff, employed Mr. Keehn to build a tank upon the leased premises for the purpose of saving water to drill a well. Immediately after employing Mr. Keehn to build said tank, Mr. Smith, on account of sickness, left for the East, giving Mr. Keehn his address and instructing him to send him the bill for building the tank to that address. Mr. Keehn built the tank, and in August some time, mailed the bill to Mr. Smith, but did not have the correct address and his letter was returned. Some time during the month of August the Beelor Oil & Gas Company brought in the second well offsetting the Keehn land. This well was put on the pump the first day of September. Mr. C. T. Smith did not return from the East until September 10th. On September 1st Mr. Keehn had a conversation with Mr. Herbert E. Smith, the secretary of the company, regarding the drilling of an offset well to the Beelor wells. On said date it was agreed between Mr. Herbert E. Smith and Mr. Keehn that the plaintiff company might drill one well on the Keehn land to be located about equal distance between the two Beelor wells, and the drilling of this one well would be considered as offsetting both said wells. On the same date Mr. Keehn advised Mr. Smith that he did not know exactly what the Beelor wells were making, but would keep an account of the same, and expect the Wapa Oil & Development Company to pay him as damages an amount equal to royalty obtained from the Beelor well 30 days after the completion of the wells for failure to offset said wells, or until the offset well was completed. There was nothing said at that time as to when the plaintiff was to drill the offset well or how soon it should start the same. Although at the time Mr. Smith endeavored to get parties over to have them drill the well. This was while Keehn was in his office.

On the 10th day of September Mr. Keehn,

without any further notice to the Wapa Oil & Development Company, executed a lease to Mr. McBride on this identical land. Mr. C. T. Smith returned on said date, or the next day, and offered to pay Mr. Keehn for building the tank, and he refused the same. On the 12th or 13th of September the Wapa Oil & Development Company placed some material on the lease for the purpose of drilling a well. This was removed by Mr. McBride or his men. Different notices were served by McBride and Keehn directing the Wapa Oil & Development Company to keep off the premises. On the 15th day of September the Wapa Oil & Development Company brought this action.

The amount of oil that had been produced from the two Beelor wells from the date the first well was shot, on July 7th, and the second well until the 10th day of September is not very definite, but the record discloses it was between 500 and 800 barrels.

There was considerable evidence regarding the amount of oil that had been produced from the old well, and the amount that it would produce, also regarding the sufficiency of the water in the vicinity during the months of July and August to drill a well; but we think these questions in this case are all material.

The plaintiff's lease was executed on the 31st day of May, and extended for a period of two years, provided, however, that if no well was commenced upon the premises prior to the 1st of December, the lease would become null and void. The lease was founded upon a sufficient consideration. The court, in stating his reason for canceling the lease, stated it was for failure to comply with the implied covenant which was to protect the premises from drainage of offset wells. The law in this jurisdiction regarding this question is stated as follows:

"Although a court of equity will decree a forfeiture of an oil and gas lease on account of a breach or an implied covenant to diligently operate and develop the property when such forfeiture will effectuate justice, the granting of such relief depends upon the facts and circumstances surrounding the particular case." Pelham Petroleum Co. v. North, 78 Okla. 39, 188 Pac. 1069; Indiana Oil, Gas & Development Co. v. McCrory, 42 Okla. 136, 140 Pac. 610.

If the defendants' testimony is true that the first offset well was shot on the 7th day of July, and the second well was not placed upon the pump until the 1st day of September, then, accepting the testimony of Mr. Keehn as true, would this justify a forfeiture of the lease? In view of the facts: that about the 1st of July, Mr. Smith, represent-

ing the plaintiff company, employed Mr. Keehn to build a tank to catch and save water to enable the parties to drill a well, Mr. Keehn accepting the employment and completing the tank about the first of August; that the 1st day of September Mr. Keehn agreed that one well would be sufficient to comply with the implied covenant in the lease for drilling offset wells, and at the same time he advised the plaintiff that he would expect to hold them for damages for failure to drill an offset well, and the amount that he would demand would be the same royalty that the landowner would receive from the Beelor wells after 30 days, until a well was completed on his land, under this state of facts, could he then, without any further notice to the company or without making any other demand upon the company to commence a well, declare the lease forfeited on the 10th day of September? Having entered into an agreemnt on the 1st day of September that he would accept one well as being a compliance with the implied covenant, the plaintiff was entitled to a reasonable time, when no time was stipulated, to commence the drilling or begin operations. There is no evidence in the record that ten days would be an unusual length of time after making an agreement before commencing a well.

The general rule, as gathered from the different cases, may be stated that, before the lessor is entitled to declare a forfeiture for failure to comply with implied covenants, for failure to drill offset wells, he must notify the lessee and demand that the lessee comply with the implied covenants. This is nothing more than equitable. No case has ever been called to our attention where the landowner could, within ten days after agreeing where offset wells should be located, declare the lease forfeited without any notice to the lessee, for failure to commence a well, and especially where there was no time mentioned as to when the drilling should be commenced. We think the facts in this case fail to bring the case within any of the rules or any of the principles announced in any of the above-entitled cases; and this is accepting the landowner's testimony as being true in every particular.

The only other question arises over the failure to record the second lease. Mr. Cooper represented Mr. McBride in obtaining the lease, and he testified that Mr. Keehn advised him when he took his lease that Keehn had given the plaintiff a new lease, and that Keehn had advised him that the terms of the lease had been violated. Mr. Keehn testified that he advised Mr.

Cooper that he executed the lease to the plaintiff, and Mr. Cooper advised him he would take care of that. In addition to the representations made by Mr. Keehn, Cooper knew that a well was already upon the premises, and plaintiff's equipment was still in the well. He also knew or could see that a bank had been built on the premises for the purpose of saving the water to be used to drill another well. All of these things were known to Cooper, and he was McBride's agent, and represented McBride in all of these transactions.

This court, in the case of Brooks v. Reynolds, 37 Okla. 767, 132 Pac. 1091, states as follows:

"Where a person has knowledge of circumstances such as would put a prudent person, acting in good faith, upon inquiry, he is chargeable with actual notice of the facts the inquiry would have disclosed."

See, also, Winsted v. Shank, 68 Oklahoma, 173 Pac. 1041.

McBride had actual notice that the lease had been executed upon the premises, that the tank had just been built, indicating possession of the plaintiff, and the equipment was still in the old well; with all of these facts, his duty was to inquire of the lessee the right and extent of the title claimed by him. Such was the holding of this court in the case of Wilkinson v. Stone, 82 Okla. 297, 200 Pac. 196. See, also, Shaffer v. Turner, 43 Okla. 744, 144 Pac. 366. Under the undisputed evidence, the landowner would not be entitled to disclose a forfeiture of the lease for failure to comply with the implied covenants, and McBride is in no better position than the landowner, he having taken his lease with notice of the former lease.

The judgment of the court is therefore reversed and cause remanded, with instructions to the trial court to render judgment in favor of the plaintiff and against the defendant and the intervener and to proceed with an accounting between the plaintiff and the defendant, McBride.

HARRISON, C. J., and PITCHFORD, ELTING, and NICHOLSON, JJ., concur.