**COTNER et al. v. MUNDY et ux.**

No. 11652—Opinion Filed Oct. 9, 1923.

1. **Contracts — Construction—Intention of Parties.**

A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.

2. **Same — Evidence — Circumstances of Making.**

A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates.

3. **Same — Reasonableness—Implied Stipulations.**

Stipulations which are necessary to make a contract reasonable to usage are implied in respect to matters concerning which the contract manifests no contrary intention.

4. **Mines and Minerals—Lease of Gravel Pit—Diligence Implied.**

Where the only consideration for the lease of a sand and gravel pit for a long period of years is a royalty on the sand and gravel removed by the lessee, and the lease contract contains no express provisions for continuous operation, or for forfeiture of the lease for failure to develop and operate the pits, and the circumstances under which the lease was executed show that it was the mutual intention of the parties that the lessee should develop and operate the pits with reasonable diligence, the court will read into such contract an implied covenant to continuously operate the lease with reasonable diligence.

5. **Same—Forfeiture for Failure to Operate.**

Where the owner leases a sand and gravel pit for a period of 15 years and by such lease gave the lessee the exclusive right to the control and operation in consideration of a royalty of 2½ cents per yard of the sand and gravel removed, and the lease by its terms made no provision for the forfeiture for failure to operate the lease, and the lessee operated the lease for two years and failed or refused to operate such lease for a period of four years, held, that the court did not err in canceling the lease for failure to work and operate the lease in accordance with the implied covenant to continuously operate the lease with reasonable diligence.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Marshall County; Geo. S. March, Judge.

Action by A. E. Mundy and Mary Mundy against A. H. Cotner and Southwestern Gravel Company. Judgment for plaintiffs, and defendants appeal. Affirmed.

Moore & West, for plaintiffs in error.

Geo. E. Rider, for defendants in error.

Opinion by RAY, C. This suit is by A. E. Mundy and Mary Mundy, husband and wife, to cancel a sand and gravel lease on 80 acres of land in Marshall county, and to quiet title upon the grounds (1) that the lessee had failed to comply with the implied covenant to exercise diligence in the operation of the lease, and (2) that the 80 acres was a part of the homestead and the wife had not joined in the execution of the lease and the same was, therefore, void. Judgment was for the plaintiffs, canceling the lease and quieting title, and defendants appeal.

A number of errors are assigned but the contentions of the plaintiffs in error are presented in their brief under three propositions:

"(1) That the court erred in holding as a matter of fact that the eighty acres of land in question constituted a part of the plaintiff's homestead, and that inasmuch as the plaintiff, Mary Mundy, did not join in the contract, that said lease contract was void.

"(2) That the court was in error in holding as a matter of law that the defendants were required under the lease contract in question to continuously operate the gravel pit whether the same could be operated at a profit or not, and that the same rule with reference to the development and operation of a gravel pit obtains as that required relative to the diligence in the operation for oil and gas under an oil and gas lease contract; that therefore the failure to continuously operate said gravel pit by defendants operated as an abandonment on their part of their rights under the lease contract.

"(3) That the court erred in refusing and ruling out competent and legal evidence on the part of plaintiffs in error."

1. As the case must be affirmed on the merits without regard to whether or not the land was impressed with the homestead character, that question will not be considered.

2. The lease was for a period of 15 years and contained no forfeiture clause. By the terms of the lease the lessee was given the exclusive right to work and operate the sand and gravel pits, the right of way over the land, to lay and maintain railroads, sidetracks and switches, to dig for water, to construct any and all buildings and fixtures necessary and proper to carry out the purposes of the lease, with the privilege of removing all buildings on railroad tracks or switches any time the lessee might deem necessary or desirable. The consideration was $1 and a royalty of two and one-half cents per cubic yard for all sand and gravel taken from the premises, to be payable on the 20th day of each month succeeding the month in which the royalty accrued. the lessee to keep books showing the number of cars loaded with sand and gravel, the number of yards in each car, and to have book open and subject to the inspection of the lessor at all times. The lessee owned a sand and gravel pit adjoining and lying between the railroad and the land here involved which appears to have been to some extent developed at the time the lease was executed.

The findings of the court were that the lessee operated the lease for two years and had abandoned for four years.

We think the evidence sustains the findings of the trial court. The lease was entered into March 4, 1913, and the pit was operated till March, 1915, and royalties amounting to $438.34 were paid during that time. Nothing further was done with the exception of repairing the tracks, moving a steam shovel on the ground in 1918, and moving one carload of gravel a short time before this suit was begun, February 26, 1920. Two reasons are assigned for failure to continuously operate: (1) That there was no market, and (2) inability to get cars. owing to the embargo placed upon such shipments by the director general of railroads, neither of which is satisfactorily established by the evidence. The question presented is. Does the lease contract contain an implied covenant for a continuous operation of the lease, in the absence of express words to that effect, such as will work a forfeiture for failure to operate the lease?

Sections of the Comp. Stat. 1921, applicable are as follows:

"Sec. 5039. A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."

"Sec. 5050. A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates."

"Sec. 5058. Stipulations which are necessary to make a contract reasonable to usage are implied in respect to matters concerning which the contract manifests no contrary intentions."

Applying the above quoted sections to the established facts, we think it was the intention of the parties that development and operation of the lease should be carried on with reasonable industry. Such has been the holding of this court in a number of cases construing oil and gas leases. Indiana Oil, Gas & Development Co. v. McCrory, 42 Okla. 136, 140 Pac. 610; Pelham Petroleum Co. v. North, 78 Okla. 39, 188 Pac. 1069; Wapa Oil & Development Co. v. McBride et al., 84 Okla. 184, 201 Pac. 984; Papoose Oil Co. v. Rainey. 89 Okla. 49, 213 Pac. 882.

But plaintiffs in error contend that the same rule of construction does not apply as in the case of oil and gas leases where, because of the peculiar nature of oil and gas, and the danger of loss to the owner

from drainage by surrounding wells, such leases are construed most strongly against the lessee and in favor of the lessor, while in the case of other minerals the contract is construed most strongly against the lessor and in favor of the lessee. We find no fault with this contention, but the principle applied in the two cases is the same, differing only in the degree of diligence required. In the case of oil and gas where, owing to their peculiar natures, often likened to wild animals, they may run away and be lost to the owner, a greater degree of diligence is required of the lessee in development and operation than in other mining ventures where no permanent loss can occur. But in either instance, where the only compensation received by the lessor for the exclusive right of possession and operation is a royalty on the mineral removed, a long and unjustified suspension of development and operation is detrimental to the lessor in that he receives no compensation during such suspended operation. The duty of the court, therefore, is, taking into consideration the circumstances under which the contract was made and the matter to which it relates, to give such interpretation to the contract as to give effect to the mutual intention of the parties as it existed at the time of contracting. Applying this principle of interpretation, we think the trial court was right in finding that the lessee had abandoned operation, and was justified in canceling the lease. The lessee operated the lease for two years and paid the royalty, and failed and refused to operate for a period of about four years without any reasonable or justifiable excuse therefor, during which time the lessor was deprived of compensation. We think the lessee has not exercised that reasonable diligence mutually agreed upon at the time of contracting.

Where the only consideration the lessor receives for the exclusive right to explore, develop, and remove the mineral is a royalty, whether it be oil and gas, or other minerals, the courts have read into the lease the implied covenant to develop and operate with reasonable diligence. 27 Cyc. 705, Chandler v. French (W. Va.) L. R. A. 1915 B. 56; Eastern Kentucky Mineral & Timber Co. v. Swann-Day Lumber Co. (Ky.) 46 L. R. A. (N. S.) 672; Killebrew et al. v. Murray (Ky.) 151 S. W. 662; Stodard v. Illinois Improvement & Ballast Co. (Ill.) 113 N. E. 913.

It is contended that under the authority of Papoose Oil Co. v. Rainey et al., 89 Okla. 110, 213 Pac. 882, the action would not lie because of failure of the lessor to give notice of his intention to claim a forfeiture. In that case the notice given was held sufficient. The notices given in the two cases are very similar. In the above cited case, "plaintiff notified the defendant that he demanded that it execute a release, and that he considered the lease invalid." In this case the plaintiff, in a conversation with one of the interested parties, acting at the time as manager, in which conversation the failure to operate the pits was being discussed, the lessor said to him, "I will not stand for it any longer," and "If you don't get a contract and get something out of it right now, I am going to do something myself." We think in the circumstances in this case the notice was sufficient, if any was required.

The record does not show a tender of evidence and we are, therefore, unable to say whether or not proper evidence was excluded.

The judgment should be affirmed.

By the Court: It is so ordered.