## No. 14,948.

### Rocky Mountain Fuel Company *v*. Clayton Coal Company.
(134 P. [2d] 1062)

Decided February 8, 1943.   Rehearing denied March 1, 1943.

Mr. ALBERT L. VOGL, Mr. FRANK A. WACHOB, for plaintiff in error.

Mr. JOSEPH D. PENDER, Mr. R. H. BLACKMAN, JR., for defendant in error.

*In Department.*

MR. JUSTICE JACKSON delivered the opinion of the court.

IN a suit to quiet title, the district court of the City and County of Denver entered a decree in favor of the plaintiff, The Clayton Coal Company, hereinafter referred to as the Coal Company, and against The Rocky Mountain Fuel Company, hereinafter referred to as the Fuel Company. The latter company brings the case here on writ of error.

The narrative of pertinent facts begins with the 14th day of July, when Frances M. Chase, being the owner in fee of two quarter sections of land in Weld county, entered into a contract of purchase and sale with Walter and Clarence Gray, hereinafter referred to as the Grays,

in respect to said land, and later executed her warranty deed conveying the land to the Grays. Both contract and deed were placed in escrow with a Denver bank. On September 1, 1931, the Fuel Company, being the owner of all of section 29 and the northwest quarter of section 28, township 1 north, range 68 west, Weld county (its Columbine coal mine being located on the northeast quarter of section 29), entered into a lease with the Grays with respect to the above mentioned two quarter sections, i. e.: northeast quarter and the southwest quarter of section 28, both quarters being contiguous to the coal lands of the Fuel Company. On September 25, 1931, the Grays quitclaimed to Frances M. Chase an undivided one-half interest in all of their right, title and interest to coal, oil, and other minerals underlying the premises, including any interest that they now have or may hereafter acquire in said coal, oil, and other minerals by reason of the contract of purchase dated July 14, 1930, and warranty deed dated November 28, 1930, which instruments were held in escrow. On October 21, 1932, the Grays, through their attorney, wrote a letter stating that they were cancelling the lease, and on November 5, 1932, the Fuel Company recorded the lease in the records of Weld county. Subsequently the Grays filed suit in the United States district court of Colorado to cancel the lease. The Grays, after making some payments under their contract with Frances M. Chase, mutually agreed with her to cancel the contract which was never recorded and the copies of which have been lost or destroyed. On June 28, 1933, Frances M. Chase, by special warranty deed, conveyed, along with other property, the above mentioned two quarter sections covered by the Gray lease to her son, Gaylord R. Chase. On May 24, 1934, the Grays' suit in the federal district court to cancel the lease was dismissed for lack of prosecution. On December 20, 1937, Gaylord R. Chase conveyed the premises by special warranty deed to Thomas W. Cosslett, and the Grays simultaneously conveyed the same

property by quitclaim deed to Cosslett; and on the next day Cosslett conveyed to the Coal Company by quitclaim deed the mineral rights to these two quarter sections covered by the Gray lease.

The lease between the Grays and the Fuel Company contains many of the usual clauses appearing in mining leases, including the last paragraph that "time is of the essence of the within lease throughout," and sets up a sliding scale of royalty payments. Unusual provisions are:

1. It runs "for an indefinite term, for the purpose of mining and marketing coal therefrom as its [the lessee Fuel Company's] needs and requirements demand so long as the coal contained in the aforesaid property is of workable nature and can be operated at a profit, and the lessee shall determine when the coal seam is workable * * *."

2. Lessee "shall not be required to start development work *toward* any coal in the said leased premises until September 1, 1932, and such development work thereafter to be prosecuted as determined by the lessee's needs and requirements which it may determine. The lessee *shall have the right* to protect and explore said leased premises at any and all times after date hereof."

3. "*After* the beginning of development work *in* said leased premises the lessee will extract and remove therefrom a minimum production of six thousand (6,000) tons of run of mine coal annually * * * ."

The Fuel Company has never begun development work in the leased premises and therefore has not obligated itself under 3. It did start development work *toward* the leased premises by continuing the line of its main haulage in a general easterly direction from the northeast quarter of section 29 into the northwest quarter of section 28; then subsequently turning south it approached the northerly boundary line of the southwest quarter of section 28, being one of the quarter sections of the Gray lease, but instead of continuing on into the

Gray quarter section it drove westerly back into the northeast quarter of section 29 and thence south on its own property into the southeast quarter of section 29 in a line generally paralleling and in fairly close proximity to the western boundary line of the southwest quarter of section 28, the Gray lease. The Fuel Company's engineer testified that they were still in coal when, after driving the main south, they turned west again rather than continue into the land covered by the Gray lease; that he thought the coal was the same in the southwest quarter of section 28 as in the Fuel Company's property, and that the reason for turning west was so that the main passageways should be located on the Fuel Company's property. Although the Fuel Company's correspondence indicates that it is its intention now to mine coal on the two quarters in section 28 covered by the Gray lease and contract, its counsel, in their argument, contend that there is no obligation upon it to do so even at the present time.

The trial court's decree quieting the title in favor of the Coal Company was based on findings that the only consideration for the granting of the lease was the agreement of the Fuel Company to pay royalties on the coal produced from the leased premises, and that it was therefore the duty of the defendant to prosecute the work required of it under the lease with reasonable diligence; that time was expressly made the essence of the agreement, and that the defendant failed to prosecute such work with reasonable diligence and failed to work the leased premises, within a reasonable time or at all, and that the Fuel Company thereby forfeited and abandoned the lease. Further, that the Grays, who, as lessors, executed the lease to the Fuel Company as vendee, never acquired any title to the premises conveyed by the lease; that therefore there is no privity of contract between the Fuel Company and the Coal Company or any of its predecessors in title, and that the

lease is therefore of no effect against the Coal Company.

■ ■ ·Counsel for the Fuel Company urge that in a suit to quiet title plaintiff must allege and prove possession of the property, title to which is sought to be quieted. In this case neither plaintiff nor defendant owns the surface of the two quarter sections covered by the Gray lease, and the only way in which any person could be in actual possession of the minerals under the surface would be through actual mining operations and workings—of which it is admitted there are none on the premises in question. Under such a situation we are of the opinion that constructive possession is sufficient for maintaining an action to quiet title. *Mitchell v. Titus,* 33 Colo. 385, 80 Pac. 1042; *Stafford v. National Granite Co.,* 70 Colo. 572, 203 Pac. 673. It is not necessary, however, to go into an extended discussion on the law of constructive possession because of the fact that the Fuel Company stipulated with the Coal Company that the Coal Company "is the owner of the coal mineral rights in question * * * subject to the determination by this court as to whether or not said ownership is subject to the leasehold rights claimed by The Rocky Mountain Fuel Company." The Fuel Company also waived the question of jurisdiction of the trial court arising from the alleged lack of possession of the Coal Company when it prayed in its answer "that a decree be entered herein in favor of the said defendant and against the plaintiff, quieting in said defendant all of its claims, rights and interests in and to said described premises under said lease," etc. *Square Deal Gold Mining Co. v. Colomo Mining Co.,* 61 Colo. 93, 156 Pac. 147; *Gutheil Park Investment Co. v. Town of Montclair,* 32 Colo. 420, 76 Pac. 1050; *Mulford v. Rowland,* 45 Colo. 172, 100 Pac. 603; *Relender v. Riggs,* 20 Colo. App. 423, 79 Pac. 328.

■ The Fuel Company claims that, because its lease was recorded, the Coal Company purchased the property

with full knowledge of the lease and the claimed rights of the defendant. We believe that section 113, chapter 40, '35, C.S.A. is conclusive on this point: . "When a deed or any other instrument in writing affecting title to real property, shall have been recorded and such deed or other instrument shall contain a recitation of or reference to, some other instrument purporting to affect title to said real property, such recitation or reference shall bind only the parties to the instrument and shall not be notice of ['to' in 1927 laws] any other person whatsoever, unless the instrument mentioned or referred to in the recital be of record in the county where the real property is situated; and unless the same be so recorded, no person other than the parties to the instrument shall be required to make any inquiry or investigation concerning such recitation or reference. . * * *" Applying that section of the statute to the instant case, the lease between the Grays and the Fuel Company was recorded. It is an instrument affecting title to real property. It contained a reference to another instrument purporting to affect title to said real property, namely: the contract of purchase and sale between the Grays and Mrs. Chase. The latter instrument is not recorded in Weld county. Therefore, such reference to the contract of purchase and sale binds only the parties to the lease agreement, i. e., the Grays and the Fuel Company, and is not notice to any other person whomsoever; and the Coal Company, not being a party to the instrument, is not required to make any inquiry or investigation concerning such recitation or reference.

A similar situation pertains in the quitclaim deed above mentioned running from the Grays to Frances M. Chase. There reference is also made to the unrecorded Chase-Gray contract of purchase and the undelivered and unrecorded Chase-Gray warranty deed.

■ Counsel for the Fuel Company argue that the Grays were in the main chain of title, both by their deed to Mrs. Chase and by their deed to Cosslett, and there-

fore plaintiff was bound to inquire concerning the Grays' interest and the interest of parties claiming under the Grays. We do not agree with this statement. Until the Grays acquire title from the owner of the property they cannot put themselves in the main chain of title by merely quitclaiming to those who are already the owners of the property. The grantee in a quitclaim deed does not, by accepting it, admit that his grantor has a valid title, or any title, to the property conveyed.

It is argued that the evidence shows that the Coal Company actually did make inquiry concerning the Grays' interest in the property. Such inquiry would then lead to the fact that the Grays' only interest in the property had been lost by the mutual cancellation of the Chase-Gray contract; that the Fuel Company's recorded lease was from a lessor who had failed to acquire title to the property under the lease.

█ █ Counsel for the Fuel Company in oral argument cite the recent case of *Cavos v. Geihsler, et al.,* 109 Colo. 163, 123 P. (2d) 822, as the most recent Colorado case to be added to those cited in their brief as authority for the proposition that their interest could only be extinguished by foreclosure. We see nothing in that or other cases to support that contention. That was the case of a vendor and purchaser under a contract of sale, where the latter had performed to the extent that he had a substantial equity in the property, as a result of which we held that he should not be forced to lose it without opportunity to protect it by having a redemption period such as is afforded in mortgage foreclosure proceedings. The instant case would be applicable to that case if Frances M. Chase, after having received a substantial payment from the Grays under their contract, had attempted summarily to dispossess them without action in the nature of foreclosure and without giving them (the Grays) a redemption period. But in the instant case it has been noted that the Grays and Mrs. Chase made a settlement, mutually cancelling their con-

tract of purchase and sale, and the document or documents evidencing the contract are now lost. Water cannot flow higher than its source; and we do not believe the Fuel Company, which is the lessee of the Grays, is in a position to assert a right which its lessors, by their own action, are barred from asserting. The Fuel Company's lease with the Grays is not a lease and bond and does not contemplate the eventual purchase by the lessees of the lessors' property. On the contrary, it is a simple lease providing for rentals based upon the tonnage mined and one under which no payments whatsoever have been made to lessors. Under any theory, therefore, there was no substantial payment on account of principal, in fact, no payment at all, that might even tend to bring it under *Cavos v. Geihsler, supra.*

In the instant case there is evidence of a written contract, but the evidence also shows that it has (1) been lost; (2) the amount that has been paid thereunder, and particularly whether it is substantial enough to bring it under the case of *Cavos v. Geihsler, supra,* is uncertain; (3) the parties to the contract, who might have testified as to the terms of the same and the payments that they had made, were not called as witnesses; and (4) the contract has been mutually cancelled by the parties thereto. From that recital we are left only with inferences, but inferences that support reasons against, rather than in favor of, invoking the rule in *Cavos v. Geihsler, supra.*

From the foregoing it is apparent that we agree with the trial judge, that there was no privity of contract between the Fuel Company and Frances M. Chase and her successors in interest, and that the lease is therefore of no effect against the Coal Company. *Scroggs, et al., v. Harkness Heights Land Co.,* 76 Colo. 597, 233 Pac. 831; *Bishop v. Barndt, et al.,* 43 Cal. App. 149, 184 Pac. 901; *Oakman v. Marino,* 241 Mich. 591, 217 N.W. 794; *Hartt v. Jahn,* 59 Mont. 173, 196 Pac. 153.

■ During the course of the trial the Fuel Company

offered evidence concerning certain conversations and negotiations between the Grays and the Fuel Company leading up to the execution of the lease. This evidence was rejected by the court, and error is alleged because of this rejection. We see no reason here for deviating from the general rule, that all prior negotiations are merged in the final execution of a document. Here there is no ambiguity, the language is clear. *Bastien v. Bronstine,* 104 Colo. 521, 92 Pac. P. (2d) 736; *Thompson, et al. v. Sweet,* 91 Colo. 552, 17 P. (2d) 308. In *American Crystal Sugar Co. v. Nicholas,* 124 F. (2d) 477 (cited during oral argument), parol evidence was admitted showing how the contract was to be carried out. In the instant case the evidence offered was merely explanatory of why the parties had contracted as they had. We do not believe therefore that *American Crystal Sugar Co. v. Nicholas, supra,* is in point, nor are other cases cited in counsel's brief.

█ We further believe that the trial court was justified in holding that, under the circumstances of this particular case, the lease was abandoned and forfeited by the Fuel Company; that where the only consideration the lessor receives for the right to explore, develop and remove the mineral is a royalty, the courts have read into the lease the implied covenant to develop and operate with reasonable diligence. 27 Cyc. 705; *Chandler v. French, et al.,* 73 W. Va. 658, 81 S.E. 825, L.R.A., 1915 B 561; *Stoddard v. Illinois Improvement & Ballast Co.,* 275 Ill. 199, 113 N.E. 913. This rule applies to minerals in place, such as coal, as well as to oil and gas. *Cotner, at al. v. Mundy, et ux.,* 92 Okla. 268, 219 Pac. 321; *Kentucky Coke Company, Inc., et al. v. Smith, et al.,* 207 Ky. 485, 269 S.W. 558; *Mansfield Gas Co. v. Alexander,* 97 Ark. 167, 133 S.W. 837; *Colorado Fuel and Iron Co. v. Pryor,* 25 Colo. 540, 57 Pac. 51.

Judgment affirmed.

Mr. Chief Justice Young, Mr. Justice Burke, and Mr. Justice Knous concur.