**PAPOOSE OIL CO. v. RAINEY et al.**

No. 13880—Opinion Filed March 27, 1923.

(Syllabus.)

1. **Appeal and Error—Objections and Exceptions—Findings.**

The failure of the trial court to make more specific findings of fact is not reviewable in the absence of a request for additional findings or exception taken to the failure of the trial court to make additional findings.

2. **Oil and Gas—Cancellation of Lease for Failure to Develop—Cancellation in Part.**

A court of equity will declare a forfeiture of an oil and gas lease because of the breach of an implied covenant to diligent-ly operate and develop the property when such forfeiture will effectuate justice, but the granting of such relief depends upon the facts and circumstances surrounding the particular case; and if the evidence shows that a part of the leased premises under an oil and gas lease has been properly developed with reasonable diligence by the lessee, and other parts have not, the court may cancel the lease as to the undeveloped portion and permit the lessee to continue to operate the developed part thereof.

3. **Same—Prerequisite to Forfeiture—Demand by Lessor for Development.**

In case of the breach of an implied covenant to properly develop an oil and gas lease, the lessor must notify the lessee and demand that the lessee comply with the implied covenants before a court of equity will grant a forfeiture.

4. **Same—Findings of Nondevelopment—Evidence.**

Evidence examined, and, held, that the findings of the trial court that the leased premises have not been properly developed is not clearly against the weight of the evidence, and the judgment of the lower court should not be disturbed.

Error from Superior Court, Okmulgee County; H. R. Christopher, Judge.

Action by Robert M. Rainey and others against the Papoose Oil Company for cancellation of oil lease. Judgment for plaintiffs and defendant brings error. Affirmed.

B. C. Conner, Beeman Strong, and Ames, Chambers, Lowe & Richardson, for plaintiff in error.

D. H. Linebaugh, Rainey & Flynn, W. F. Semple, and Calvin Jones. for defendants in error.

COCHRAN, J. This action was commenced by the defendants in error, hereinafter referred to as plaintiffs. against the plaintiff, hereinafter referred to as defendant, for the cancellation of an oil and gas lease on 40 acres of land. One of the grounds for cancellation was a failure to diligently develop, and on that issue the trial court found:

"That the premises involved herein have not been properly developed for oil and gas purposes with reasonable diligence by the defendant."

The defendant assigns as error the failure of the trial court to make certain specific findings of fact in connection with the diligence in the development of this property. Upon the conclusion of the evidence, defendant made requests for findings of fact and propounded a number of

interrogatories to be answered by the trial court. The case was taken under advisement, and some days thereafter the findings of the court were filed and judgment rendered on the same day. To all of which a general exception on the part of the defendant was noted. No requests were made for additional findings at that time, and no exception was taken by the defendant advising the court that the findings were incomplete and were not sufficiently in compliance with the interrogatories which had theretofore been propounded. Under such circumstances, we are of the opinion the defendant cannot now urge as error the failure of the trial court to make more specific findings. Bridge v. Eggan, 17 Kan. 589; Else v. Freeman (Kan.) 83 Pac. 403; Allen v. Wildman, 38 Okla. 652, 134 Pac. 1102.

It is next urged that the finding of the trial court and the judgment rendered are clearly against the weight of the evidence. The rule applicable to cases of this kind was announced in Pelham Petroleum Co. v. North, 78 Okla. 39, 188 Pac. 1069, as follows:

"It is now well settled that a court of equity will declare a forfeiture of an oil and gas lease because of the breach of an implied covenant to diligently operate and develop the property when such forfeiture will effectuate justice, but the granting of such relief depends upon the facts and circumstances surrounding the particular case."

This court has also held that in cases of a breach of the implied covenant to properly develop, the lessor must notify the lessee and demand that the lessee comply with the implied covenant    Wapa Oil & Development Co. v. McBride, 84 Okla. 184, 201 Pac. 984. An examination of the evidence convinces us that the finding of the trial court that the lessor had not diligently developed the portion of the lease involved in this case is not clearly against the weight of the evidence. While the 40 acres in controversy is a portion of a lease covering 160 acres, on the remaining portion of which there has been considerably more development than on the 40 in controversy, this court in the third paragraph of the syllabus of Pelham Petroleum Co. v. North, 78 Okla. 39, 188 Pac. 1069, said:

"A court of equity has the power to conform its decrees to the varying circumstances of each particular case, and if the evidence shows that a part of the leased premises under an oil and gas lease has been properly developed with reasonable diligence by the lessee, and other parts have not, the court may cancel the lease as to the undeveloped portions and permit the lessee to continue to operate the developed part thereof."

The testimony discloses that the plaintiff Rainey purchased the land covered by the lease in controversy in December, 1920. The lease on this land was originally executed to the Ventura Oil & Gas Company and was purchased by the defendant on December 31, 1917. At the time of the purchase by the defendant, 14 wells had been drilled on the 160 acres covered by the lease, two of which were dry holes and others came in as producers, but two had been abandoned before the trial of this case. The initial production from these wells was from eight to 75 barrels per day. On the 40 acres in controversy there was one producing well in the southeast corner and one dry hole just north of this producing well. No other wells had been drilled on this 40. The testimony does not disclose the amount of oil which was produced from the producing well on this 40 when it was first brought in or the amount it was producing at the time of the trial; but the well had been producing since about 1912, and it, together with the other nine producing wells on the 160 acres were making between 23 and 24 barrels per day. This lease was in what is known as a "spotted field," in which good wells were often found offsetting dry holes and dry holes often found offsetting producing wells. From the time this lease was purchased by the defendant, no drilling operations had been carried on by it at all. It purchased the property based on the settled production and was content to take the production from the wells already drilled without drilling the remaining locations on the 40 acres in controversy. The defendant introduced several experts who testified that in their judgment the property was properly developed, but it appears they based their testimony largely upon the fact that there were no paying wells on other property which had not been offset, and also upon the amount of oil which was being produced from the wells at the time of the trial, without regard to the probable amount of initial production from new wells. One of these experts claimed that it would not be profitable to drill other locations on this 40, although other wells in that location had shown an initial production of as much as 100 barrels per day, because the lessees owning the surrounding leases had a vacuum in pumping for a number of years, and that in his opinion most of the oil had been withdrawn from the Glenn sand on this 40. This was the condition that ex-

isted at the time plaintiff purchased the property, and the testimony of the plaintiff Rainey is uncontradicted that before he purchased the property he discussed with defendant's superintendent the matter of drilling some shallow wells on this 40 and that the superintendent promised that some shallow wells would be drilled. About the time the property was purchased by the plaintiff, the Wilcox sand was discovered, the original well being about one and one-half miles from the property in controversy, and showing an initial production of several hundred barrels. Immediately thereafter, the plaintiff requested the defendant to drill a deep test. Receiving no reply, in a few days he again wrote the defendant. The defendant replied that on account of the pipe lines limiting the amount of purchases of oil it had temporarily abandoned the plan to drill a deep test, but promised to proceed with the test as soon as conditions warranted. The plaintiff thereupon agreed that he would be patient about the drilling for the time being. After waiting about two months, the plaintiff wrote the defendant calling attention to the fact that a well had been brought in within one-half mile from this property and asking if the defendant would not start drilling operation on the 40 at once. After waiting about three weeks and receiving no reply, the plaintiff again wrote the defendant calling attention to the previous letter and request for additional drilling, and also that other parties had offered to drill this 40, and asking defendant to either release the 40-acre tract or drill the same. On May 4th, defendant replied, calling attention to the condition of the oil market and that the producers considered it was better to allow the oil to remain in its natural storage and that practically all producers preferred to carry on no new operations, stating that they disliked to start an active drilling campaign for that reason. On May 18th, plaintiff notified the defendant that he demanded that it execute a release and that he considered the lease invalid. After this notice was given, the defendant then offered to begin immediate drilling on the property if the plaintiff would waive his claim for cancellation of the lease. This the plaintiff declined to do.

In the case of Blackwell Oil & Gas Co. v. Whitesides, 71 Oklahoma, 174 Pac. 573, this court in the fourth paragraph of the syllabus said:

"In an action to cancel an oil and gas lease for failure to diligently operate and develop the property, the trial court found that the leased premises were not being sufficiently operated and developed. The judgment will not be disturbed by the Supreme Court on the ground of the insufficiency of the evidence, since it is not clearly against the weight of the evidence."

In view of the facts above set forth, we cannot say that the finding of the trial court was clearly against the weight of the evidence, and the judgment based thereon should not be disturbed because of the insufficiency of the evidence.

The other questions involved in this case are identical with those involved in the case of Papoose Oil Co. v. James A. Swindler et al., No. 13881, this day decided (pending on rehearing).

The judgment of the trial court is affirmed.

JOHNSON, C. J., and KANE, McNEILL, KENNAMER, NICHOLSON, and BRANSON, JJ., concur.