**BROSWOOD OIL & GAS CO. et al. v. MARY OIL & GAS CO. et al.**

No. 20506. Opinion Filed May 31, 1933.

Rehearing Denied July 5, 1933.

Rollin E. Gish, H. O. Bland, and J. B. Dudley, for plaintiffs in error.

Stuart, Coakley & Doerner, for defendants in error.

WELCH, J. This action was commenced in the trial court by Broswood Oil & Gas Company, a corporation, and W. C. McBride, Inc., a corporation, as plaintiffs, alleging in substance that plaintiffs together owned an undivided 89/128 interest in the oil and gas and mineral royalty in the lands in question in Tulsa county: that defendants W. L. Ransom and E. S. Horn claim to own the remaining fractional interest in the royalty, and that the remaining defendants were holders of the oil and gas lease on the lands in question; that said defendant lease owners had failed to comply with the terms of their lease, in that after due notice given in writing by plaintiffs, the defendants had failed and refused to drill additional wells and offsets to producing and paying wells situated on adjoining lands; that such failure to drill wells had resulted in damages to plaintiffs in the sum of $33,-000; that said defendants were guilty of oppression and fraud in the conduct and operation of the lease on said premises, and on account thereof said defendants should be found liable for exemplary or punitive damages in the sum of $10,000. Plaintiffs sought judgment for cancellation of the oil and gas lease, and for damages, actual and exemplary.

The defendant E. S. Horn, trustee for the Imperial Royalty Company, answered, claiming to own an undivided 35/128 interest in the oil and gas royalty, and in substance joined in the claims of the plaintiffs for cancellation of the oil and gas lease and for damages.

The lease had, been drilled to production some years prior to the commencement of this action, and to the time of trial oil had been produced in large quantities, and the royalties properly paid, and it was the contention of the defendant lease owners that they had used due diligence and properly drilled the premises in good faith as prudent operators; that prudent operators would not have drilled any one of the five locations insisted upon by plaintiffs; that by reason of all of the facts, plaintiffs were not entitled to require that such additional locations be drilled; that no drainage of oil from the premises had occurred, and that plaintiffs had not been damaged by any failure to drill; that the lease was producing at the commencement of the action, and at the time of the trial, with as much production as could be had by prudent operation, and that plaintiffs were entitled to no relief.

No objection was made to the commencement of this action by persons owning a portion only of the royalty interest, nor to the maintenance of the action by and on behalf of parties owning less than all of the royalty interest.

The cause was tried to the court without a jury. The evidence disclosed that there was substantial production on the land in question; that there was production north, east, south, and southwest of the land in question. The evidence disclosing in full detail the location of numerous oil wells and gas wells, several were substantial producers and several were very small producers, with occasionally a dry hole, particularly west of the premises in question. The plaintiffs and cross-petitioner Horn insisted that the premises involved had not been sufficiently drilled to bring that production to which they were entitled, and that failure to drill the premises involved had resulted in drainage of oil from the premises by and through the producing wells on adjoining properties. The defendant lease owners insisted that the premises had been drilled to the fullest extent justified by prudent operation, and had been, and were producing substantially, and that by reason of the location of the producing wells on adjoin-

ing premises, and the amount of production therefrom, and the nature and character of the geology of the premises, and by reason of the counter pressure of water, and the situation of the premises and adjoining premises in detail, that there was in fact no drainage whatever of oil from the premises involved. by and through the wells on the adjoining premises, and that if there would have been any drainage whatever, the same was very slight, and by and through wells of such insignificant production as to make it wholly unwarranted to drill offset wells on the premises involved in the action, or to undertake to compute any damages for drainage.

The record of the testimony is very voluminous, with numerous maps and plats showing location, depth, and production in detail of many wells, and showing the geological structure in and under the premises involved in the action and adjoining premises. Numerous witnesses testified in the trial. Several were expert geologists; several were experienced and practical operators. There was testimony by laymen and lawyers. The cause was thoroughly prepared and diligently tried.

At the conclusion of the trial the cause was argued and briefs were submitted to the trial court. The arguments of counsel and briefs submitted to the trial court are not, of course, included in the record, but judging from the diligence in the trial of the cause, and the earnest arguments and extensive briefs filed in this court, we assume there was at least no lack of diligence in finally presenting the matter to the trial court.

After taking the case under advisement in order that briefs might be submitted. the trial court made extensive findings of fact. The material portion thereof, for the purpose of this determination, being in substance as follows: That the plaintiff Broswood Oil Company is the owner of an undivided 57/128 interest, and plaintiff W. M. McBride is the owner of an undivided 32/128 interest in the oil and gas royalty in and to the lands involved, and that the defendant E. S. Horn is the owner of an undivided 35/128 interest therein. That. beginning in the year 1923, the defendant lessees commenced drilling and brought in paying wells on the premises covered by the lease in question, one of which was in the south 40 acres. The court made specific findings as to the production of various wells located on adjoining premises, some coming in for a large initial production, but in practically every instance rapidly or immediately declining to small producers; two of the wells declining to production of about four barrels per day, and some wells, particularly west of the premises involved, being nonproducers or dry holes. The court further found specifically in reference to the five drilling locations urged, and contended for by plaintiffs. and in each instance the finding of the court was against the contention of the plaintiffs and cross-petitioner Horn, and in favor of the defendant lessees.

The trial court further found that the defendant lessees, as practical operators, were not, in the exercise of good faith, required to drill any of the offset wells contended for by plaintiffs, and that there was no bad faith on the part of the defendant lessees in the conduct of the drilling operations in the territory, and that on account of the circumstances, situations, and conditions shown to exist in, about, and under the premises involved in this action, the defendant lessees, as practical operators, were not required to do the drilling requested, demanded, and contended for by plaintiffs. and in substance the trial court found generally against the plaintiffs and in favor of the defendant lessees upon each and all of the issues presented.

We deem it unnecessary to set out the testimony in any detail, nor to comment thereon further than to say that the evidence was in sharp conflict upon most every question of fact. save and except the physical condition as to location and depth of wells, and as to the geology, and as to the amount of productions of all of the many wells referred to. The plaintiffs relied largely upon the testimony by way of opinion of witnesses to establish the fact that defendants should have drilled further, and that there was drainage, and these contentions were refuted by the defendant lessees by the opinions of numerous witnesses.

We have reviewed the record and considered the briefs of the parties and the oral arguments, and it appears that the findings of the trial court are abundantly supported by competent evidence. We recognize the rule that the findings of the trial court should be sustained if reasonably supported by the evidence. and that the conclusions of the trial court should not be disturbed. unless we could say such conclusions were clearly against the weight of the evidence. The burden was upon the plaintiffs in the trial court to establish their right to recover by a fair preponderance of the evidence. This, in our judgment, they failed to do. Upon this appeal the burden is upon the plaintiffs to show that the conclusions

of the trial court are contrary to the clear weight of the evidence, and this the plaintiffs have failed to do, as it clearly appears that the findings and judgment of the trial court are abundantly supported by the evidence.

In Fox Petroleum Co. v. Booker, 123 Okla. 276, 253 P. 33, the judgment of the trial court canceled the oil and gas lease for lack of diligence in development on the part of the lessee, but that judgment was reversed in this court, because the same was held to be against the weight of the evidence, and therein this court said:

"This court is committed to the doctrine that neither party [to an oil and gas lease] is the arbiter of what is reasonable diligence. * * * but both are bound by the standard of what in the circumstances would be reasonably expected of an operator of ordinary prudence, having due regard for the interest of both."

The premises involved in this action have been developed by the defendant lessees, and for many years have been, and are now, producing oil and gas in substantial quantities, and they should not be required to surrender to plaintiffs the premises involved, and make further payment to plaintiffs in damages, unless the testimony and evidence of the plaintiffs show, by at least a clear preponderance, that the defendants have been guilty of lack of diligence and misconduct or wrongful action resulting in damages to the plaintiffs. The evidence does not show this, but, on the contrary, shows that the premises have been developed in good faith and to the extent reasonably justified by prudent operation, and that the development by the defendant lessees, and the procuring of production, has resulted in those benefits and profits to the plaintiffs and cross-petitioner Horn to which they were reasonably entitled as owners of the royalty interests which they represented.

Under such circumstances, it would be manifestly unjust to cancel this lease, and to require the lessees to pay to the plaintiffs and cross-petitioner a sum claimed by them as damages. The trial court observed the witnesses, heard their testimony, weighed it in connection with the numerous maps and plats introduced, and upon consideration thereof, and the arguments and trial briefs, the trial court found and concluded all the several matters in favor of the defendant lessees.

It is true in this case that the defendant lessees owned leases on some of the adjoining lands to the premises here involved, and while that is a circumstance to be considered, it is no more than that. This owning of an adjoining lease is within itself no badge of fraud. It is a circumstance to be considered in connection with all of the circumstances in evidence in determining the diligence used, or lack of diligence in drilling the premises involved, to procure production therefrom and to prevent drainage therefrom. And when all due diligence and good faith are shown, the ownership of an adjoining leasehold is unimportant.

The judgment of the trial court denying any relief to the plaintiffs and cross-petitioner Horn is affirmed.

RILEY, C. J., CULLISON, V. C. J., and ANDREWS and BAYLESS, JJ., concur. SWINDALL, McNEILL, OSBORN, and BUSBY, JJ., dissent.

---

BUSBY, J. (dissenting). In disagreeing with the majority opinion I do not question the soundness of the rules of law and equity therein announced, but I do question the manner in which those rules and principles are applied to the fact situation with which we are confronted in the case at bar.

This action was commenced by the plaintiffs in the trial court as owners of undivided fractional interests in and to the oil and gas and mineral royalty under the W. ½ of the S. E. ¼ of section 6, twp. 19 north, and range 12 east of the Indian Meridian.

The action is equitable in nature. The plaintiffs seek the cancellation of an oil and gas lease and damages resulting from alleged failure to further develop the premises covered by the lease. Plaintiffs base their right to prevail upon the alleged breach by the lessee of the covenants of the lease, claiming that such covenants were broken by the failure of the lessee to develop, drill necessary offsets, and diligently develop and operate for oil and gas on the leased premises and protect the premises against drainage.

This case being equitable in character, it is within the proper province of this court to examine the evidence for the purpose of determining its weight, and in the event the judgment and decision of the trial court is clearly contrary to the weight of the evidence as disclosed by the record, it is within the province and power of this court to reverse the same. Chamness et al. v. Collopy, 90 Okla. 71, 215 P. 953; Teague, Adm'r, v. Murphy, 91 Okla. 116, 216 P. 475; Harris v. International Land Co., 89 Okla. 163, 213 P. 845.

Since this is a dissenting opinion, I will

refrain from an extended discussion of the evidence, mentioning only those salient facts which I believe should control the decision. The lease in question, as it was originally executed, covered 160 acres of land, including, in addition to 40 acres with which we are principally concerned, the other three 40-acre tracts embraced in the southeast quarter of section 6, twp. 19 north, and range 12 east. It was a departmental lease executed in 1908 for a term of five years from the date of approval by the Secretary of the Interior and as much longer as oil and gas should be found in paying quantities. Covenants to protect against drainage by drilling offset wells and to properly develop the property are set forth in express provisions of the lease. This is of minor importance, however, since in the absence of such express covenants the same would be implied by operation of law.

The lessees, who are defendants in this action, at the present time own only that portion of the original lease on the 160-acre tract of land which covers the west half of that tract. On the north 40 acres of the 80 acres covered by their lease three producing oil wells were drilled in 1924 with initial production of 1,900 barrels, 1,600 barrels, and 1,000 barrels, respectively. On the south 40 acres in question only one producing well was drilled; that well having an initial production of 1,200 barrels and having been completed in 1924. It is located in the northeast corner of the south 40-acre tract. It is urged by the plaintiffs that the discovery of this producing well in the northeast corner of the 40-acre tract required and rendered necessary further development of this south 40 acres, and that a failure to further develop the other portion of this tract constituted a breach of the covenant of the lease to properly develop the leasehold premises. In this connection it should be borne in mind that the covenant to properly develop the lease and the covenant to protect against drainage by the drilling of offset wells are separate and distinct. A breach of the covenant to further and properly develop does not necessarily depend upon the existence of drainage in connection with an adjoining property. Merrill's Implied Covenants, page 125. This court has held that it is within the power of a court of equity to cancel a lease as to that portion of the property which has not been properly developed. Papoose Oil Co. v. Rainey, 89 Okla. 110, 213 P. 882; Scott v. Price et al., 123 Okla. 172, 247 P. 103; Imo Oil & Gas Co. v. Chas. E. Knox Oil Co. et al., 120 Okla. 13, 250 P. 117. It seems to me that, independent of the existence of any drainage from adjoining property, the discovery of a well in the northeast corner of the 40 acres in question, which well had an initial production of 1,200 barrels, was in itself sufficient to require that the lessee further develop and explore this 40 acres for oil and gas. This they have failed to do. But, in addition to the discovery of a producing well on the northeast corner of the property in question, it also appears from the record that the same parties who are defendants in this case and who own this oil lease also own the lease on the adjoining land to the south, and that three wells have been drilled by them along the southern border of the land in question and in close proximity to the boundary line thereof. In fact, from 50 to 150 feet from said south line. And another and additional well has been drilled in a short distance from the southwest corner of this 40 acres and on the adjoining lease of the defendants. These wells are all producing oil and at the time of the trial indicated a profit, although the profits were not very large. The defendants also owned a lease for oil and gas purposes adjoining this property on the west which had several producing wells thereon. The lease on the west covered 80 acres of land and the total production thereon shows a profit at the time of trial of something over $40,000. Examination of the record also discloses that on the lease adjoining the 40 acres in question on the east, which is owned by the Continental Oil Company, profitable production exists. It is also apparent from the record that the 40 acres in question are nearer to the center of the field than either the producing lease on the west owned by the defendant or the producing lease on the south, also owned by the defendants. We then have this character of a situation. The 40 acres in question are completely surrounded by producing property, yet only one producing oil well exists thereon, and there has been no effort made on the part of the defendant to determine whether the remainder of the 40 acres will produce oil and gas. The defendants seek to justify their failure to explore and develop the remainder of the 40 on the theory that as a prudent lessee it cannot be anticipated that such development would result in profit to both the lessor and the lessee. In support of this contention they point out that the wells immediately adjacent to this particular 40 on the south and on the west are small producers and show little or no profits. This is an excellent argument and to a certain extent is supported by the record and might possibly entitle defendants to prevail if we were considering only the covenant to pro-

tect against drainage. But when we view the facts in the situation in the light of the existence of profitable production on the adjoining property to the north and east, and in view of the one well on the 40 in question which was mentioned above, I do not think that the contention of the defendants should prevail in connection with the covenant in the lease to further and properly develop the property. To my mind the position taken by the defendants in this case is like the position taken by the proverbial dog in the manger which would neither eat the hay nor permit it to be eaten. The defendants refuse to drill the undeveloped portion of this 40, seeking to excuse their failure in that respect on the ground that the production might be unprofitable, and at the same time they seek to hold the lease so that no one else can drill the undeveloped portions. In my judgment this is an appropriate occasion to exercise the power of the court of equity at least to cancel the lease as to the undeveloped portion of the south 40 as was done in the case of the Papoose Oil Co. v. Rainey, supra.

For the reasons set out herein, I dissent from the manner in which I conceive the rules and principles of law are applied to the fact situation involved in this case.

OSBORN, J., concurring.