**POHLEMANN et al. v. STEPHENS PETROLEUM CO.**

No. 4412.

United States Court of Appeals
Tenth Circuit.

May 7, 1952.

Owen Vaughn, Chickasha, Okl. (Clarence McElroy and Melton, McElroy & Vaughn, Chickasha, Okl., were with him on the brief) for appellants.

J. H. Hewett and James D. Fellers, Oklahoma City, (Mosteller, McElroy & Fellers, L. Karlton Mosteller and John C. Andrews, Oklahoma City, Okl., were with them on the brief) for appellees.

Before PHILLIPS, Chief Judge, and BRATTON and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

On August 3, 1940, Frank Pohlemann, as lessor, entered into an oil and gas lease with Stephens Petroleum Company,[1] as lessee, covering the NW ¼ of S 33 T 6 N R 10 W, Caddo County, Oklahoma. The lease was for a primary term of five years and as long thereafter as either oil or gas should be produced from the land.

Frank Pohlemann and Kathryne H. Pohlemann brought this action to cancel the undeveloped portions of the lease on the alleged grounds of breach of the implied covenant to develop and abandonment.

On June 4, 1941, Stephens drilled Pohlemann Well No. 1 on the land covered by the lease to a depth of 3369 feet in the Noble-Olson formation. Initial production from the well was 14.15 barrels per day, but the production rapidly declined. Because of the decline in production, Stephens continued drilling of the well to a depth of 6012 feet in the Medrano formation. The well was completed in the Medrano formation on November 12, 1943, and thereafter continued to be a commercial producer.

On September 5, 1947, all production from the Medrano sand was unitized. The area unitized was known as the West Cement Medrano Unit. The northeast ¼ of the northwest ¼ and the northeast ¼ of the northwest ¼ of the northwest ¼ and the northeast ¼ of the southeast ¼ of the northwest ¼ of Section 33, on which Pohlemann No. 1 is located, was included in the unit and Pohlemann is still receiving royalties from the production allocated to Pohlemann No. 1.

On September 21, 1948, Stephens began the drilling, on the non-unitized portion of the lease, of Pohlemann Well No. 2. That well was completed at a depth of 3360 feet in the Noble-Olson formation on October 9, 1948. Salt water was encountered and the well was abandoned as a dry hole on January 3, 1949. Stephens has not drilled any other wells on the lease.

In February, 1949, the Pohlemanns made written demand on Stephens for further development of the lease and advised Stephens that unless it commenced further drilling operations on or before March 10, 1949, they would treat the lease as surrendered and cancelled as to the undeveloped portion thereof.

In answer to the demand and notice of cancellation Stephens advised the Pohlemanns that it had no intention to abandon the lease, but that geological information then available made it imprudent to immediately spend large sums of money in further development. The Pohlemanns then commenced this action to cancel the lease as to the undeveloped portion.

Geological non-conformities on the lease make it extremely difficult to forecast the probable results of further drilling on the undeveloped portion of the lease. Stephens

---

1. Hereinafter referred to as Stephens.

had compiled all the available geological information with respect to the West Cement Field, in which the Pohlemann lease is situated, and was constantly engaged in gathering further geoligical information from drilling operations in such field. A geologist for Stephens, who had considerable experience in the West Cement Field, testified that, in his opinion, known geological information showed it would not be economically prudent to immediately drill additional wells on the lease, but that new information was constantly being obtained and that other wells being drilled in the vicinity of the lease might change the picture and warrant further drilling on the lease. Waldo Stephens, vice president of Stephens, testified to the same effect and stated that Stephens had no present intention of abandoning the undeveloped portion of the lease. He further testified that another operator had drilled a well to a depth of 8000 feet, located to the northwest of the lease; that he had conferred with the geologist for such operator and other operators who were interested in drilling another well for the purpose of testing the deep formations lying below the Medrano in order to determine the best location for such a deep test, either on the Pohlemann or adjacent leases; that such a deep test, even if not drilled on the lease, would afford valuable information with respect to future developments on the lease; that Stephens had received authorization from P. A. D., a Federal authority, to purchase 10,000 feet of pipe for a deep test and that it intended to drill such deep well within a year. He admitted that Stephens did not intend to immediately drill additional wells on the lease and stated it would proceed with further drilling on the lease if and when additional geological information made it prudent so to do.

The developments on the lease of the Noble-Olson sand have resulted in a substantial loss to Stephens. Its net return from the lease, to and including August, 1950, was $89,141.28. The royalties received by Pohlemann, to and including August, 1950, were $68,875.01.

The trial court found that the lease is located on the edge of the West Cement Field; that nearby wells to the north and east of the lease producing from the Noble-Olson formation are small producers; that there are no producing wells adjoining the lease to the south or west; that, as found by the Oklahoma Corporation Commission, it was not practical to include in the unitization unit that portion of the lease not embraced in such unit; that Stephens had compiled available geological information and was continuing to acquire such information, bearing on the feasibility of further drilling on the lease; that in reliance on the lease and other leases which it held, Stephens was proceeding, in cooperation with other operators, to obtain a deep test in the West Cement Field and had obtained an allocation of steel pipe for a 10,000 foot well in such field.

The court concluded that the Pohlemanns had failed to establish any intent on the part of Stephens to abandon the lease and that Stephens had not breached any express or implied covenant of the lease to diligently and prudently develop the same; and that it would be inequitable under the facts and circumstances of the case, having due regard for both the interests of the lessor and the lessee, to cancel any part of the lease.

■ The duty imposed by the implied covenants of a lease to diligently develop the lease and to drill offset wells to protect the lease from drainage is to do that which an operator of ordinary prudence, having a regard for the interests of both lessor and lessee, would do.[2]

2. Ramsey Petroleum Corporation v. Davis, 184 Okl. 155, 85 P.2d 427, 429; Pelham Petroleum Co. v. North, 78 Okl. 39, 188 P. 1069, 1072; Donaldson v. Josey Oil Co., 106 Okl. 11, 232 P. 821, 823; Broswood Oil & Gas Co. v. Mary Oil & Gas Co., 164 Okl. 200, 23 P.2d 387, 389; Indian Territory Illuminating Oil Co. v. Haynes Drilling Co., 180 Okl. 419, 69 P.2d 624, 626; Denker v. Mid-Continent Petroleum Co., 10 Cir., 56 F.2d 725, 727, 84 A.L.R. 756; Brewster v. Lanyon Zinc Co., 8 Cir., 140 F. 801, 814.

■ Neither the lessor nor the lessee is the arbiter of the extent to which, or the diligence with which the exploration and development shall proceed.[3]

■ Cancellation is an equitable remedy and suits for cancellation are purely of equitable cognizance and the right to relief is controlled by equitable principles.[4]

■ In Oklahoma the doctrine of abandonment is applied only in cases where an intention to abandon is accompanied by physical relinquishment.[5] An expressed intention not to drill until conditions change is not indicative of an intent to abandon, but rather an assertion of reliance upon the prudent operator rule.[6]

■ The burden of proving a breach of the implied covenant to diligently develop the lease is on the lessor.[7] Ordinarily, in order to establish a breach of the covenant to diligently develop, the lessor must prove that an additional well would probably produce sufficient oil to repay the expense of drilling, equipping and operating such well and also provide a reasonable profit on the entire outlay.[8] The lessor, however, is re-lieved from such burden where the lessee fails to proceed with development for an unreasonable length of time.[9]

■ Here, the proof wholly failed to establish an intention to abandon or any physical relinquishment of the lease.

The demand for further development was made approximately four months after the completion of Pohlemann No. 2 and the case was tried approximately 18 months after the completion of Pohlemann No. 2. Clearly, under the facts and circumstances here presented, failure to continue development for a period of 18 months was not unreasonable. Stephens was engaged in obtaining further geological information and intended to drill a test well to deeper sands, either on the Pohlemann lease or on adjacent leases held by it, within a reasonable time. It was proceeding as a prudent operator would, having in mind the interests of the lessor and lessee.

■ We conclude, as did the trial court, that the proof wholly failed to establish either abandonment or a breach of the implied covenant to diligently develop.

Affirmed.

3. Ramsey Petroleum Corporation v. Davis, 184 Okl. 155, 85 P.2d 427, 429; Indian Territory Illuminating Oil Co. v. Haynes Drilling Co., 180 Okl. 419, 69 P.2d 624, 626; Brewster v. Lanyon Zinc Co., 8 Cir., 140 F. 801, 813, 814; Doss Oil Royalty Co. v. Texas Co., 192 Okl. 359, 137 P.2d 934, 938.

4. McKenna v. Nichlos, 193 Okl. 526, 145 P.2d 957, 960; Doss Oil Royalty Co. v. Texas Co., 192 Okl. 359, 137 P.2d 934, 936; Dow v. Worley, 126 Okl. 175, 256 P. 56; Scott v. Price, 123 Okl. 172, 247 P. 103.

5. Doss Oil Royalty Co. v. Texas Co., 192 Okl. 359, 137 P.2d 934, 938; Sadler v.

Public National Bank & Trust Co. of New York, 10 Cir., 172 F.2d 870, 873.

6. Doss Oil Royalty Co. v. Texas Co., 192 Okl. 359, 137 P.2d 934, 938.

7. Ramsey Petroleum Corporation v. Davis, 184 Okl. 155, 85 P.2d 427, 430; Colpitt v. Tull, 204 Okl. 289, 228 P.2d 1000, 1003.

8. Ramsey Petroleum Corporation v. Davis, 184 Okl. 155, 85 P.2d 427, 430; Carter Oil Co. v. Mitchell, 10 Cir., 100 F.2d 945, 950.

9. Doss Oil Royalty Co. v. Texas Co., 192 Okl. 359, 137 P.2d 934, 938; Colpitt v. Tull, 204 Okl. 289, 228 P.2d 1000, 1003.