**MONTANA EASTERN PIPE LINE COMPANY, a corporation, Plaintiff,**

**v.**

**SHELL OIL COMPANY, a corporation, Fidelity Gas Company, a corporation, Montana-Dakota Utilities Company, a corporation, etc., Defendants.**

**Civ. No. 206.**

United States District Court
D. Montana,
Billings Division.
March 29, 1963.

⊙═720

---

E. K. Cheadle, Billings, Mont., and Martin & Young, Baker, Mont., for plaintiff.

Raymond Hildebrand, Glendive, Mont., Armin M. Johnson, Minneapolis, Minn., and C. N. Wagner, Denver, Colo., for defendants.

JAMESON, District Judge.

Defendants have moved for summary judgment pursuant to Rule 56(b), F.R. Civ.P. The relevant facts have been stipulated, and the parties in their respective briefs are in essential agreement in their statements of fact. The issues arise in the conclusions to be drawn from these facts and supporting documents.

Plaintiff brought this action to quiet title to two United States Government oil and gas leases covering lands in Fal-

lon County, Montana.[1] These leases are a consolidation of four oil and gas prospecting permits issued between December, 1926, and February, 1928, to permittees Wood, Daley, Scott and Teters. On February 14 and 20, 1931, the permittees executed written assignments to plaintiff. Upon filing of the assignments the Commissioner of the General Land Office on November 11, 1931, approved the assignments and issued a consolidated prospecting permit to plaintiff. The two oil and gas leases were issued to plaintiff on April 20, 1933, and December 1, 1938, respectively, subject to any rights which Atlantic-Pacific Oil Company might be able to establish.

Between March 1, 1928, and October 24, 1928 (and prior to the execution of the assignments to plaintiff) each of the permittees entered into an operating agreement with Herbert Stokes whereby Stokes was granted the sole and exclusive right to explore for and produce oil and gas from the lands covered by the permits.[2] Atlantic-Pacific Oil Company succeeded to the rights of Stokes in these operating agreements. Atlantic-Pacific subsequently instituted an action in the

District Court of the Sixteenth Judicial District of the State of Montana, in and for the County of Fallon, against Montana Eastern Pipe Line Company, et al. On October 5, 1935, the District Court entered a judgment in favor of Atlantic-Pacific. This judgment was affirmed by the Montana Supreme Court on May 24, 1937. Atlantic Pacific Oil Co. v. Montana Eastern Pipe Line Co., 105 Mont. 35, 71 P.2d 1073.

On January 6, 1936, Atlantic-Pacific entered into two operating agreements with Fidelity Gas Company, a defendant herein, for the development of lands lying below a depth of 2,000 feet. On January 6 and 16, respectively, plaintiff entered into unit agreements No. 4 and No. 5 with Montana-Dakota Utilities Company, another defendant, for the development of lands lying above the depth of 2,000 feet.

On April 10, 1951, the defendants Fidelity Gas Company, Montana-Dakota Utilities Company, and Shell Oil Company entered into an operating agreement, whereby Shell was granted sole and exclusive right to explore for and produce

1. Pertinent allegations of the amended complaint include:

    "VIII. That by virtue of its ownership of the aforementioned oil and gas leases the plaintiff has the exclusive right to drill for, extract, produce and dispose of all of the oil and gas in and under the lands included in said oil and gas leases, as hereinabove described.

    "IX. That the defendants, named and unknown, as aforesaid, claim and assert, or may claim and assert an estate, right or interest in or to the lands and premises above described, or in or to the oil and gas therein or thereunder, or in, to or under the oil and gas leases above described, or some part thereof, or a lien or encumbrance upon said premises, adverse to the ownership and rights of the plaintiff herein.

    "X. That any such claim or possible claims of the defendants and each of them is without any right whatsoever, and that said defendants, named and unknown, have no estate, right or interest whatever in or to or under said oil and gas leases, or in or to said described lands and premises or the oil and gas therein or thereunder."

2. The pertinent provisions of the Stokes operating agreement are summarized in plaintiff's brief as follows:

    "(1) *Right conferred upon Operator*—
    - (a) The right to enter upon the land and prospect and drill the same for oil and gas;
    - (b) The right to purchase all oil or gas saved and produced from the premises;

    "(2) *Obligations assumed by Operator*—
    - (a) To pay the permitees certain percentages of royalty;
    - (b) That if oil or gas in commercial quantities was found on the premises, the operator would proceed with due diligence to develop the premises to the maximum production commensurate with market conditions.

    "(3) *Rights conferred upon Permitees*—
    - (a) The right to certain royalty payments;
    - (b) The right at option of permitee to cancel the agreement should the operator fail to keep or perform the conditions of the agreement."

oil or gas in lands lying below a depth of 2,000 feet. Pursuant to this agreement, Shell Oil Company, between March 1, 1957, and March 4, 1959, drilled to completion four producing wells and one dry hole. The accumulated production from the four wells to October 31, 1962, was 491,988 barrels.

On October 30, 1940, in consideration of the payment of $1,500, plaintiff, together with Capital Gas Company and John Wight, executed a release in favor of Atlantic-Pacific Oil Company and Montana-Dakota Utilities Company, a copy of which is attached to defendants' answer as Exhibit 2.

Plaintiff's action to quiet title is based primarily upon its claim that the defendants and their predecessor in interest, Atlantic-Pacific Oil Company, have failed and neglected to develop the lands covered by the leases in accordance with the covenants contained in the Stokes operating agreements.

In support of their motion for summary judgment defendants contend:

1. Defendants have not been served with notice of default under the Stokes agreements.

2. Until such notice has been served, the final judgment and decree in the case of Atlantic-Pacific Oil Company v. Montana Eastern Pipe Line Company, et al., is res adjudicata between the parties and constitutes a bar to maintenance of this action.

3. Until such notice has been served, the final judgment and decree is res adjudicata and estops plaintiff from re-litigating the ownership of operating rights under the federal leases involved in this action.

4. The release given by plaintiff and others on October 30, 1940, constitutes a bar to maintenance of this action.

Plaintiff contends:

1. Notwithstanding performance, if any, of the obligations owed by defendants Fidelity Gas Company and Montana-Dakota Utilities Company under the Fidelity operating agreements and unit agreements No. 4 and No. 5, the defend-

ants have failed and neglected to develop the lands in accordance with the covenants contained in the Stokes operating agreements.

2. Neither the Atlantic-Pacific judgment nor the release bars the plaintiff from asserting a breach of the Stokes agreements; the plaintiff is the owner of a continuing contingent reversionary interest under the Stokes agreements; the obligation to develop in accordance with the terms of the Stokes agreements is a continuing obligation; and should the contingency occur at any time during the life of the Stokes agreements, the reversionary interest will ripen, and plaintiff will be entitled to the possession of the lands or such portion thereof as may have succumbed to the contingency.

3. No notice was necessary, and if given, it would have been an idle act.

It is necessary first to ascertain just what was involved and determined in Atlantic-Pacific Oil Company v. Montana Eastern Pipe Line Co., 1937, 105 Mont. 35, 71 P.2d 1073, and a companion case, Atlantic-Pacific Oil Company v. Gas Development Co., 105 Mont. 1, 69 P.2d 750. It appears from the opinion of the Montana Supreme Court in the latter case that Atlantic-Pacific brought these actions "in the nature of a suit to quiet title, seeking to have certain contracts relating to the production and recovery of oil and gas adjudged to be valid". The Stokes operating agreements referred to above were "the subject matter of the controversy" there in issue. (105 Mont. 1, 69 P.2d 750)

The conclusions of law of the trial court read in pertinent part:

"1. That the plaintiff's operating agreements are in all respects valid, effective, legal and outstanding, and binding upon the defendants, or any of them, as the claimants or owners and holders of oil and gas lease upon the real estate and premises covered by said operating agreements, or otherwise.

"2. That the defendant, Montana Eastern Pipe Line Company, took

the assignments of permit subject to the said outstanding operating agreements and subject to the rights of the plaintiff thereunder.

"3. That the authorization by the Secretary of the Interior of oil and gas lease upon said premises does not affect the rights of the plaintiff under said operating agreements, and the said defendant, Montana Eastern Pipe Line Company, holds or will hold the said lease and the rights thereunder in and to said real estate and premises, subject to the said operating agreements in favor of the plaintiff, and said operating agreements are now effective against the said lease or any lease issued by the said Secretary of the Interior upon said real estate and premises.

"5. Subject to the terms and conditions of said operating agreements, the plaintiff has the exclusive right to operate the said lands and premises under the said oil and gas lease, for the production of oil and gas, without restriction from the defendants or any of them.

"6. Subject to the terms and conditions of said operating agreements, the plaintiff shall be and become the owner of all oil and gas produced from said lands and premises, with unrestricted power of disposition thereof as against the defendants or any of them.

"8. The plaintiff is entitled to have its said rights and title quieted as against the claims and pretensions of the defendants."

The court entered judgment in conformity with its findings of fact and conclusions of law, quieted title in Atlantic-Pacific under the operating agreements, and forever enjoined the defendants from interfering with or violating the rights of Atlantic-Pacific under the operating

agreements. The Supreme Court affirmed.

As set forth supra, subsequent to the entry of judgment by the district court, Atlantic-Pacific entered into operating agreements with the defendants Fidelity Gas Company and Montana-Dakota Utilities Company; and these defendants in turn entered into an operating agreement with the defendant Shell Oil Company. The rights of all defendants accordingly are predicated upon those of its predecessor in interest, Atlantic-Pacific Oil Company. Likewise, any rights of the plaintiff are subject to the rights of Atlantic-Pacific and its successors, the defendants herein.

Plaintiff argues that it is the owner of a continuing contingent reversionary interest in the Stokes agreements. Defendants do not contend that this interest was terminated by the Atlantic-Pacific judgment, but rather that plaintiff cannot litigate the issue of defendants' performance under the Stokes agreements in the absence of a notice of default, and until such notice is served, the issue and parties before this court are identical to the issue and parties before the Montana courts in the Atlantic-Pacific case.

■ Plaintiff contends further that the Montana court's statement that Montana Eastern Pipe Line Company had not there given sufficient notice of default was dictum, and as applied to that case, erroneous dictum. With respect to the failure to give notice, the Montana court said in pertinent part:

"We deem it advisable to mention other phases of the controversy which tend to support our conclusion. "Paragraph 10 [3] of the operating agreements provides for cancellation on failure of plaintiff to keep and perform the terms of the agreements, the right to take advantage of such failure being at the option of the first party, Wight, as the authorized

---

3. Paragraph 10 of each operating agreement provided: "Failure on the part of the party of the second part (Stokes) to keep and perform the terms and conditions of this agreement shall render it subject to cancellation at option of party of the first part. (Permittee)"

attorney of the permittees. Wight, in conjunction with the permittees, gave the notices of cancellation, and, in giving the notices, assigned no reason for the act, nor specified the particular way or manner in which plaintiff had failed to comply with any provisions of the agreements. Before any right to cancel could arise or be exercised, we think it was necessary that Wight, and possibly the permittees, give timely notice and call attention or show wherein Stokes or his assignees had failed to comply with such agreements." [4] (105 Mont. at 25, 26, 69 P.2d at 759.)

4. The court continued: "In the case of Papoose Oil Co. v. Rainey, 89 Okl. 110, 213 P. 882, the court went so far as to hold that before equity will grant a forfeiture for breach of implied covenants in a lease, the lessor must notify the lessee of the breach and demand compliance with the covenants. Every party is entitled to his day in court before he may be legally deprived of any property right. In the attempted cancellation of the operating agreements, Stokes was given no hearing; no attempt was made to have the respective rights of the parties legally determined, but Wight and the permittees arbitrarily assumed to reinvest themselves with full power over and control of the permits by cancellation of the operating agreements, and in doing so clearly violated paragraph 10 of such agreements."

5. If dictum, in my opinion it was not "erroneous dictum". On the contrary, the language of the court is persuasive and in line with the general rule requiring notice of default discussed infra.

6. This letter reads:
"June 8, 1955
"Shell Oil Company,
"Hart Albin Building,
"Billings, Montana
Re: Cedar Creek Anticline Oil & Gas Leases,
"Attention Legal Department
"Gentlemen:
"On behalf of John Wight, who is at present in the east, and at his request, I am writing you this letter to put you on notice that he and the companies with which he is connected or associated, assert a claim to rights in various leases along the Cedar Creek Anticline, mainly those identified as leases of Montana Eastern Pipe Line Company, Capital Gas

It is apparent that the court passed squarely upon the sufficiency of the notice in "support" of its conclusion. I cannot agree that this statement was dictum.[5]

It is stipulated that the only notices of default claimed by the plaintiff to have been served upon any of the *defendants* are two letters—the first dated June 8, 1955, addressed to Shell Oil Company signed by E. A. Wight on behalf of John Wight;[6] the second dated February 26, 1957, also addressed to Shell Oil Company, signed by John Wight.[7]

The first letter simply gives notice that Wight and companies with which he is

Corporation, designated further as the Teters, Wood, Scott, Talmadge, Norskog, Anderson, et al leases, and that preparations are being made to commence quiet title action to determine and establish these rights, and that no title asserted by M. D. U., or Fidelity Gas Co., should be considered as valid until this action has been determined.
"Very truly yours,
"E. A. Wight
"cc. Land Department"

7. This letter, written on Midwest Holding Company stationery reads:
"February 26, 1957
REGISTERED MAIL
"The Shell Oil Company
"Hart-Albin Building
"Billings, Montana
"RE: John Wight's claim to the oil rights covering lands in the Cedar Creek Field, Fallon County, Montana, as per plat attached.
"Gentlemen:
"Under date of September 10, 1949, again on May 20, 1951, and several times since, I addressed a letter to your company and all other oil companies operating in eastern Montana. I enclosed a plat describing the lands in which I claim to own or control the deep rights or hold a substantial interest in the oil rights. In those letters I warned your company and the other oil companies that, if they acquired any leases on the oil rights, on the lands I described, they were doing so at their own risk and that a serious doubt existed that they would be obtaining any valid title to the lower zones until my rights have been determined.
"I notice that apparently the Shell Oil Company is disregarding my previous letters and warnings and are proceeding to

associated claim rights in various leases, including the leases here involved, and that they intend to commence a quiet title action to determine and establish those rights. In the second letter Wight claims to "own or control the deep rights or hold a substantial interest in the oil rights" of the lands and again indicates that he intends to commence a quiet title action. Neither letter states any reason why defendants' rights are not valid or should be cancelled or terminated; and neither letter specifies any way or manner in which any of the defendants has failed to comply with any provision of the Stokes agreements. Obviously these letters are insufficient if notice was required.

▮ Clearly the validity of the operating agreements was fully determined in the Atlantic-Pacific case, as were the rights of both plaintiff and defendants' predecessor in interest under those agreements.[8] The predecessor of defendants was held to be entitled to possession of all of the lands covered by the leases. As long as defendants perform their obligations under these agreements, they are entitled to remain in possession. Any issues with respect to the validity of the operating agreements or defendants' rights thereunder are res adjudicata.[9]

Obviously the rights of defendants are subject to the terms and conditions of the operating agreements. In support of its conclusion in the Atlantic-Pacific case, the Montana court held that before any right to cancel could arise or be exercised, it was necessary to "give timely notice and call attention or show wherein Stokes or his assignees had failed to comply with such agreements". This was not done in the Atlantic-Pacific case; nor has it been done here.

▮ The only reference to any notice of default in plaintiff's pleadings appears in paragraph VII of the amended complaint, wherein it is alleged that the

---

acquire leases on some of those lands are (sic) are developing same without any regard to what my rights may be.

"I have a legal action now pending in the State of Delaware, which action will determine my rights to the deep sands covering some of these lands and, as soon as I can obtain some additional photostatic copies from the Land Office of the pertinent documents then, if it appears that I still have any deep sand rights to other lands, as listed, I will institute a quiet title action embracing said lands.

"I am attaching hereto a list of those lands in which I claim an interest, designating the original serial number, name of original lease holders, and description of the lands. This is a duplicate of what I mailed you in 1949, 1951, and subsequently.

"I trust you will be guided by this notice and warning.

"Yours very truly,
"John Wight

"JW/gr
"Encl. 1.
"CC: Shell Oil Company, Denver, Colorado
Montana-Dakota Utilities Co., Minneapolis, Minn.
Stanolind Oil & Gas Company, Billings, Montana
Carter Oil Company, Billings, Montana

Mr. Armin Johnson, Attorney at
Law, Minneapolis"

It is stipulated that there is no record that Fidelity Gas Company, Montana-Dakota Utilities Company or Armin Johnson received a copy of this letter.

8. Note the similarity between the rights claimed by the plaintiff in those portions of the complaint set forth in note 1, supra, and those declared and granted to the defendants' predecessor in interest, Atlantic-Pacific Oil Company, in the trial court's conclusions of law set forth on page 5, supra.

9. The rule here applicable was well stated by the Montana Supreme Court in In re Smith's Estate, 1921, 60 Mont. 276, 301, 199 P. 696, 704: "The general principle announced in numerous cases is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact, once so determined, must, as between the same parties or their privies, be taken as conclusively established so long as the judgment in the first suit remains unmodified. (Southern Pac. R. Co. v. United States, 168 U.S. 1, 18 Sup.Ct. 18, 42 L.Ed. 355.)"

"plaintiff herein * * * duly served written notice on Atlantic-Pacific Oil Company that the four so-called Stokes operating agreements * * * were cancelled and terminated by reason of the failure of Atlantic-Pacific Oil Company to comply with its obligations thereunder". As noted supra, the Montana court, in Atlantic-Pacific, considered this notice and expressly held that it was insufficient. In other words, the sufficiency of that notice was in issue and determined by the Montana Supreme Court and accordingly is res adjudicata.

In at least two cases subsequent to Atlantic-Pacific the Montana court has held that a "lessor who intends to claim forfeiture, where development is an element, has the duty to demand that development proceed or commence." See Fey v. A. A. Oil Corp., 1955, 129 Mont. 300, 285 P.2d 578; and Braun v. Mon-O-Co Oil Corp., 1958, 133 Mont. 101, 320 P.2d 366. In the latter case the court pointed out that there was "no written notice of any kind of lack of development until the lessor amended his complaint at the day of the trial".

Even though plaintiff has brought an ordinary quiet title action, in effect it seeks forfeiture of the leases for failure to comply with the terms of the operating agreements. The rule set forth in Atlantic-Pacific and the other Montana cases cited above is in accord with the general rule that notice or demand is a prerequisite to cancellation or forfeiture for breach of covenants of the lease, whether express or implied.[10] Moreover, the "notice should express clearly the dereliction of which complaint is made". Merrill, Covenants Implied in Oil and Gas Leases, 2d ed. 427, § 196.[11]

This is not a case where a lease has automatically terminated, as in Schumacher v. Cole, 1957, 131 Mont. 166, 309 P. 2d 311,[12] or has been abandoned or terminated by unreasonable delay with complete failure to perform,[13] or where a lessee in response to an oral demand or otherwise has manifested his intention under no circumstances to comply with the obligations resting upon him.[14] Under these circumstances it has been held in many cases, although not uniformly, that notice would be a useless act and is unnecessary.[15]

10. The rule is expressed in Merrill, Covenants Implied in Oil and Gas Leases 420, § 192, as follows:

"In various portions of this survey, we have had occasion to note rules relating to the necessity of notice, or demand, that the implied covenants should be complied with, as a prerequisite to cancellation or forfeiture of the lease for their breach. While such notice is not required universally, the tendency is to insist upon it, and there are to be found general statements of its indispensability as a prerequisite to forfeiture. It seems fair to say that the general trend is in that direction."

See also 3 Summers Oil and Gas 366, § 469; 58 C.J.S. Mines and Minerals § 205, p. 502; and Sullivan, Handbook of Oil and Gas Law, § 108, p. 199.

11. Other cases holding that notice is required include Papoose Oil Co. v. Rainey, Okl.1923, 89 Okl. 110, 213 P. 882, cited by the Montana court in the Atlantic-Pacific case, supra; Hudspeth v. Schmelzer, Okl.1938, 182 Okl. 416, 77 P.2d 1123; Kunc v. Harper-Turner Oil Company, Okl.1956, 297 P.2d 371, 377; Pohlemann v. Stephens Petroleum Co., W.D.Okl.1951, 99 F.Supp. 875, aff'd 10 Cir., 197 F.2d 134; Davis v. Mann, 10 Cir. 1956, 234 F.2d 553, 560.

12. See also Kugel v. Young, Colo.1955, 132 Colo. 529, 291 P.2d 695.

13. See, for example, Hitt v. Henderson, Okl.1925, 112 Okl. 194, 240 P. 745; Benedum-Trees Oil Co. v. Davis, 6 Cir. 1939, 107 F.2d 981; Alphin v. Gulf Refining Co., W.D.Ark.1941, 39 F.Supp. 570.

14. See, for example, Indian Territory I. Oil Co. v. Haynes Drilling Co., Okl.1937, 180 Okl. 419, 69 P.2d 624, where the court, in recognizing that proper notice is ordinarily required, held that where "positive demand" had been made for compliance and the lessee had manifested a "definite and positive intention not to comply with such demand", notice was not required. See also 3 Summers Oil and Gas, § 469 at p. 372.

15. See 58 C.J.S. Mines and Minerals § 205, at p. 514.

222

In support of its contention that notice was unnecessary and would be a useless act, plaintiff relies primarily upon Calhoma Oil Corporation v. Conniff, Cal. 1929, 279 P. 771. This case is factually distinguishable. A lessee instituted an action to enjoin the lessors from interfering with drilling operations. The lessors, by way of affirmative defense, alleged that the lessee had violated a provision of the lease requiring continuous drilling, which violation caused the lessor to serve written notice of cancellation. Lessee contended that the initial notice of forfeiture and cancellation was insufficient and defective and that a final notice given one day before lessors' filing suit to quiet title did not comply with the statutory requirement of three days' notice in an unlawful detainer action. The court held that this statute was not applicable and continued:

"The fact that the lessors instituted a quiet title action within one day after service of the notice canceling and forfeiting the lease cannot avail the appellant (lessee), for the judgment of forfeiture now complained of was entered in this action—a separate and distinct proceeding—commenced by the lessee itself several weeks subsequent to the service of the notice of forfeiture. Assuming, only, that the owners of the land should have given some other or further notice, the lessee has all along contested, and now contests, the right of the lessors to claim possession. Therefore any defect in or failure of demand or notice may be regarded as having been waived by the appellant." (279 P. at 772.)

I question whether the rule in Calhoma v. Conniff would, in any event, be extended to the factual situation here presented. If so, I could not follow it in view of the decisions of the Montana court set forth supra, and particularly the holding in the Atlantic-Pacific case.

█ It is clear that the defendants have not been served with a notice of default. Until such notice has been served, the final judgment and decree in the case of Atlantic-Pacific Oil Company v. Montana Eastern Pipe Line Company, et al., is res adjudicata and constitutes a bar to this action. Having reached this conclusion, it is unnecessary to consider the effect of the release given by plaintiff on October 30, 1940.

Pursuant to Rule 11(b) of the local rules of court, defendants will prepare, serve and lodge form of judgment.